# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELVIN A. PRINCE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:21-00110-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melvin A. Prince brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 19, 20) and those portions of the certified transcript of the administrative record (Doc. 17) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, order the entry of final judgment, and conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See*

## I.     *Procedural Background*

Prince protectively filed the subject DIB application with the Social Security Administration ("SSA") on September 3, 2019. After it was initially denied, Prince requested, and on September 2, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On September 15, 2020, the ALJ issued an unfavorable decision on Prince's application, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 17, PageID.83-102).

The Commissioner's decision on Prince's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on January 12, 2021. (*Id.*, PageID.67-71). Prince subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

_____

Docs. 24, 25).

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must

affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the

claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "

---

record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited.").

'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as

adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires a showing that the claimant is under a disability, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the

ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant

properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Prince met the applicable insured status requirements through December 31, 2023, and that he had not engaged in substantial gainful activity since the alleged disability onset date of September 1, 2019.[7] (Doc. 17, PageID.88). At Step Two,[8] the ALJ determined that Prince had the following severe impairments: seizure disorder, obesity, and a depressive disorder.

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211.

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

(Doc. 17, PageID.88-89). At Step Three,[9] the ALJ found that Prince did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 17, PageID.89-92).

At Step Four,[10] the ALJ determined that Prince had the residual functional

---

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[11] except for the following[: he] can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds[;] can frequently balance, stoop, kneel, crouch, and crawl[;] cannot work around unprotected heights, large open bodies of water, or moving mechanical parts[;] cannot engage in commercial vehicle driving[; his] ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks and some detailed instructions consistent with reasoning level one through three

---

prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

11 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

occupations[; and he] can deal with occasional changes in a routine work setting."
(Doc. 17, PageID.83-100).

Based on the RFC and the testimony of a vocational expert,[12] the ALJ found
that Prince was incapable of performing any past relevant work. (Doc. 17,
PageID.100). However, at Step Five, after considering additional testimony from the
vocational expert, the ALJ found that there exist a significant number of jobs in the
national economy as a housekeeper/cleaner, cafeteria attendant, and storage facility
clerk that Prince could perform given his RFC, age, education, and work experience.
(*Id.*, PageID.100-102). Thus, the ALJ found that Prince was not under a disability
as defined by the Social Security Act from the disability onset date through the date
of the ALJ's decision.  (*Id.*, PageID.102).

## IV.   *Analysis*

### a.   **Dr. Chromiak's Medical Opinion**

Prince argues that the ALJ reversibly erred in finding unpersuasive the
medical opinion of consultative examiner Stephen Chromiak, M.D. The undersigned
disagrees.

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform
based on his or her capacity and impairments. When the ALJ uses a vocational
expert, the ALJ will pose hypothetical question(s) to the vocational expert to
establish whether someone with the limitations that the ALJ has previously
determined that the claimant has will be able to secure employment in the national
economy." *Phillips*, 357 F.3d at 1240.

The Social Security regulations applicable to Prince's application[13] define
"medical opinion" as "a statement from a medical source about what [a claimant]
can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or
more impairment-related limitations or restrictions in the following abilities: … (i)
[the] ability to perform physical demands of work activities, such as sitting,
standing, walking, lifting, carrying, pushing, pulling, or other physical functions
(including manipulative or postural functions, such as reaching, handling, stooping,
or crouching); (ii) [the] ability to perform mental demands of work activities, such as
understanding; remembering; maintaining concentration, persistence, or pace;
carrying out instructions; or responding appropriately to supervision, co-workers, or
work pressures in a work setting; (iii) [the] ability to perform other demands of
work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt
to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §
404.1513(a)(2). The Commissioner "will not defer or give any specific evidentiary
weight, including controlling weight, to any medical opinion(s) …, including those
from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, "[w]hen a
medical source provides one or more medical opinions or prior administrative

---

[13] On January 18, 2017, the SSA substantially revised the regulations governing
how the Commissioner considers medical evidence, including medical opinions. *See*
82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for
evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims
filed on or after March 27, 2017, such as Prince's. *Compare* 20 C.F.R. § 404.1520c
(applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §
404.1527 (applicable to claims filed before March 27, 2017). The revisions also
changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2)
(defining "medical opinion" while specifying that "the definition of medical opinion"
found in § 404.1527 applies to claims filed before March 27, 2017).

medical findings, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)."The most important factors … are supportability … and consistency…" 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally

well-supported … and consistent with the record … but are not exactly the same…"
*Id.* § 404.1520c(b)(3).

The ALJ gave sound reasons for finding Dr. Chromiak's opinion
unpersuasive. Prince's primary complaint is that the ALJ "focused almost the
entirety of the support for his decision on [Prince's] ability to work [with seizures]
before his alleged onset date[,]" and improperly faulted Dr. Chromiak for not
reviewing "any records from several years prior when [Prince] was still working."
(Doc. 19, PageID.671-672). Prince argues this evidence is irrelevant to the issue of
his ability to work after the alleged onset date of September 1, 2019, or to
determining the persuasiveness of Dr. Chromiak's opinion, rendered in early 2020.
However, the ALJ did not rest his analysis solely on evidence pre-dating the onset
date.

After explaining in detail that the evidence showed Prince's "[s]eizures were
… very well controlled when he stopped working, all on steady medication[,]" and
"had been better controlled for years[,]" the ALJ noted that Prince "admitted good
control at th[e] time" of Dr. Chromiak's examination. (Doc. 17, PageID.98). The ALJ
also found "there was no recent evidence of worsening" and "no change in
medication into early 2020…" (*Id.*). While the ALJ did note a January 2020 hospital
visit due to seizure, he also noted that there was "concern over medication
noncompliance" as the cause. (*Id.*). Overall, the ALJ found the evidence showed
Prince's "seizures are rare, controllable, and almost always flare in response to not
taking medication." (*Id.*). Prince does not meaningfully challenge the ALJ's view of

the record, and it supports the reasonable conclusion that Prince's condition had not worsened since he stopped working, and that his seizures were largely controlled by medication. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation omitted)).

Moreover, the ALJ properly rejected Dr. Chromiak's statement that Prince "for some time … has been, and for the indefinite future will be, disabled due to his risk for injury and his fall risk at any job" (Doc. 17, PageID.651, 655)—the only part of Dr. Chromiak's opinion Prince specifically mentions in his brief (*see* Doc. 19, PageID.671)—as "a conclusory statement reserved to the Commissioner alone" that "needs no further analysis." (Doc. 17, PageID.99). *See* 20 C.F.R. § 404.1520b(c)(3)(i) (for DIB claims filed on or after March 27, 2017, statements on issues reserved to the Commissioner, such as statements that a claimant is "not disabled, blind, able to work, or able to perform regular or continuing work[,]" are "inherently neither valuable nor persuasive").[14]

In sum, Prince has failed to show any error in the ALJ's consideration of Dr. Chromiak's medical opinion.

### b.   RFC

As noted previously, the ALJ found, as part of the RFC, that Prince's "ability

---

[14] To the extend Prince argues the ALJ should have accepted Dr. Chromiak's opinion simply because Dr. Chromiak diagnosed various impairments in his report, "the mere existence of these impairments does not reveal the extent to which they limit [Prince's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6.

to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks and some detailed instructions consistent with reasoning level one through three." Prince argues that this finding is inconsistent with the ALJ's Step Three finding that Prince had moderate limitations in the "paragraph b" categories of understanding, remembering or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. (*See* Doc. 17, PageID.91-92). He further asserts that moderate limitations in those categories do "not correlate with an ability to understand, remember, and carry out detailed instructions, nor the ability to concentrate, persist, and maintain pace with regard to detailed instructions." (Doc. 19, PageID.671).

> In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3) … The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. *Moore*, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). []A "mild" rating indicates that the claimant's functioning is "slightly limited;" a rating of "moderate" indicates a "fair" limitation. *Id.* § 12.00(F)(2)(b), (c).

*Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324–25 (11th Cir. 2021).

"The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four … But though the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation[s] … in a hypothetical posed to the VE." *Id.* at 1325 (citing *Winschel*, 631 F.3d at 1180-81). *See also Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").

The Dictionary of Occupational Titles (DOT) defines reasoning levels one through three as follows:[15]

- Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

- Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

---

[15]

[T]he SSA "rel[ies] primarily on the DOT … for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704, at *2. [Title] 20 C.F.R. § 416.966(d) explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs "will take administrative notice of reliable job information available" in the DOT. This subsection places the DOT first in its list of reliable government sources. *Id.* … [O]ther SSA Rulings describe the DOT as "authoritative." <u>See, e.g.</u>, SSR 96-9p.

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364–65 (11th Cir. 2018).

- Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Dictionary of Occupational Titles*, App. C, § III, 1991 WL 688702 (4th ed. 1991).

*Accord Buckwalter*, 5 F.4th at 1323. "The primary difference between levels one and two is the *length* of the instructions—not the complexity[—]with  level one being limited to one- or two-step instructions, and level two not being limited in length." *Buckwalter*, 5 F.4th at 1323. "[L]evel three … lifts the restriction on how complex the instructions can be—allowing for any 'instructions.' " *Id.*

> In *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018), [the Eleventh Circuit Court of Appeals] considered the effect of Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), which addresses what ALJs must do to resolve conflicts between the DOT and expert testimony. [The court] held in *Washington* that "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." 906 F.3d at 1362. *See also id.* at 1365 ("SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision."). A conflict is "apparent," [the court] explained, when it is "reasonably ascertainable or evident," i.e., when it is "seeming[ly] real or true, but not necessarily so." *Id.* at 1366 (citation and internal quotation marks omitted).

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021).

Acknowledging that, under a recent Eleventh Circuit holding, "there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning" that "the ALJ [wa]s required to address … and provide a

reasonable explanation for h[is] determination[,]" *Viverette*, 13 F.4th at 1317, the Commissioner concedes that Prince would be unable to perform level 3 reasoning under the RFC imposed by the ALJ, and would therefore be unable to perform one of the occupations the ALJ found Prince could perform at Step Five, that of storage facility clerk. However, as she did in *Viverette*, the Commissioner argues that any error in this regard is harmless, because Prince's moderate "paragraph B" limitations do not preclude level 1 and 2 reasoning, and the other two occupations identified at Step Five, housekeeper/cleaner and cafeteria attendant, only require level 1 and 2 reasoning, respectively. Per the vocational expert's testimony, these occupations account for a combined total of 193,000 available jobs in the national economy, which the Commissioner argues is still a significant number sufficient to satisfy her Step Five burden. While the *Viverette* panel declined to find harmless error based on a similar argument, *see* 13 F.4th at 1318-19, the Commissioner argues that the panel's concerns that led it to do so in that case are not present in this case.

However, the Commissioner fails to appreciate that, in addressing the Commissioner's similar argument in that case, the *Viverette* panel gave two alternative reasons for declining to find the ALJ's failure to resolve the apparent conflict harmless. First, the panel held that, "[i]n the words of *Washington*, '[w]e can't disregard the error'—the failure to address the apparent conflict—'on the grounds that no conflict in fact existed.' " *Id.* (quoting *Washington*, 906 F.3d at 1366). Stating that "[o]ur conclusion, moreover, remains the same even if we dig

deeper[,]" the panel then proceeded to address the merits of the Commissioner's harmless-error argument. *Id.* at 1318-19.

"[I]n this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings." *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008). *Accord, e.g.*, *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008) ("alternative holdings are binding precedent"). Thus, the undersigned need not address the merits of the Commissioner's harmless error argument as the *Viverette* panel did, because this Court is bound by *Viverette*'s alternative holding that an ALJ's failure to resolve an apparent conflict cannot be deemed harmless, since to do so would amount to a contradictory finding that "no conflict in fact existed." Because the Commissioner concedes that the ALJ here failed to resolve an apparent conflict, and because the undersigned finds no reason to believe that concession is erroneous, the Commissioner has necessarily conceded to reversible error.

### c.    Remedy

As relief, Prince requests that the Commissioner's final decision "be reversed and [Prince] found disabled[,]" with remand for further proceedings only requested in the alternative. (Doc. 19, PageID.673). The Eleventh Circuit has recognized that reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Remand for further proceedings is particularly warranted in this case, since the authority establishing

error, *Viverette*, was issue <u>after</u> Prince's administrative proceedings had concluded, and the Commissioner therefore did not have the benefit of that case's guidance before denying Prince's application. While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.*, Prince has failed to convince the undersigned that this standard is met here.[16]

---

[16] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination."). The undersigned finds no reason to believe this case is one of the "rare circumstances" where remand to the agency is not the proper remedy.[17]

Accordingly, the Commissioner's final decision denying Prince's application for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative

---

[17] In *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982), the Eleventh Circuit reversed the final unfavorable decision and ordered an award of benefits after finding the claimant there had suffered an "injustice" "[d]ue to the perfunctory manner of the hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision…" 672 F.2d at 840. Prince has not argued that he suffered a similar "injustice," and regardless this case is a far cry from what occurred in *Walden*.

proceedings.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Prince's September 3, 2019 DIB application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Prince a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Prince's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Prince be awarded benefits on the subject application following this remand.[18] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the

---

[18] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 19th day of April 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**